RECEIVED
IN ALEXANDRIA, LA

FEB 2 5 2010

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| ROY DePACK<br>FED. REG. #25730-050<br>VS. | CIVIL ACTION NO. 09-2155<br><br>SECTION P<br><br>JUDGE DRELL |
| WARDEN JOE KEFFER | MAGISTRATE JUDGE KIRK |

REPORT AND RECOMMENDATION

*Pro se* petitioner, Roy DePack, an inmate in the custody of the Federal Bureau of Prisons (BOP), who is incarcerated at the United States Penitentiary, Pollock, Louisiana (USPP), filed the instant petition for writ of *habeas corpus* pursuant to 28 U.S.C. §2241 on December 17, 2009. Petitioner challenges a prison disciplinary proceeding that resulted in the forfeiture of 54-days of good time credits and other sanctions. He seeks the restoration of those good time credits plus credit toward satisfaction of his sentence for the 60-days he spent in administrative segregation. This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court. For the following reasons it is recommended that the petition be **DISMISSED WITH PREJUDICE.**

*Background*

On March 2, 2005 petitioner pled guilty to an indictment charging him with multiple counts of bank fraud and counterfeiting in the United States District Court for the District of New Jersey. On February 7, 2006 he was sentenced to serve concurrent terms of imprisonment totaling 70 months. See United States vs. Roy DePack, No. 04-Cr-0599; see also United States v. DePack, 218 Fed. Appx. 187, 2007 WL 520313 (3rd Cir. 2007).

Petitioner was incarcerated at the Federal Corrections Institute, Schuylkill (FCIS) in Minersville, Pennsylvania from October 13, 2008 to September 23, 2009. On December 2, 2008 he was placed in the Special Housing Unit (SHU) for violating a prison disciplinary rule.[rec. doc. 3, p. 2][1]

At 8:40 p.m. Corrections Officer Menne requested a urine sample from petitioner. According to petitioner, he advised Menne that he was unable to provide the sample and Menne replied that he had 2-hours within which to comply with the demand. At 9:30 p.m. petitioner was transferred to Cell #185 lower AD and Corrections Officer Menne departed for the night. According to

---

[1] Petitioner claims that the violation that resulted in his placement in lock down was based on his alleged violation of Code 197 - use of another's telephone. [rec. doc. 3, p. 2]

2

petitioner, no officers approached petitioner thereafter to see if he was ready to provide the urine sample. According to petitioner, the officers filed a false report alleging that petitioner refused to provide the urine sample. Petitioner maintains "... no officer came to cell 185 lower AD with a bottle in his hand and paper to show that the officer was going to ask me for a urine sample..." and that prison surveillance cameras will corroborate this claim. [rec. doc. 3, pp. 2-3]

On December 3, 2008 petitioner was summoned to Lt. Reed's office and provided a copy of the incident report [rec. doc. 3-1, p. 10] charging him with refusing a urine sample. [see also rec. doc. 3-1, p. 11] According to petitioner, he advised Reed that the charges were false "... because nobody came to my cell 185 lower AD..." Reed then recorded petitioner's plea as not guilty and petitioner asked Reed to look at the surveillance video but Reed declined. Likewise, petitioner's requests to S.I.S. Lt. Kovach, the Warden, and the O.I.A. in Washington, D.C. [rec. doc. 3-1, pp. 4-5] concerning the surveillance tapes were denied. [rec. doc. 3, pp. 3-4]

On December 5, 2008 at 8:25 a.m., petitioner was served with a Notice of Disciplinary Hearing charging him with Refusing to Take a Drug Test and a copy of the Inmate Rights at

Discipline Hearing. Petitioner indicated that he did not wish to have a staff representative or witnesses. [rec. doc. 3-1, pp. 14-15]

The DHO hearing was conducted on January 5, 2009. The DHO found that petitioner had been provided advanced written notice of the charges and that he had been advised of his rights to representation and to secure the attendance of witnesses. [rec. doc. 3-1, p. 11, ¶I] According to the DHO, petitioner gave the following statement, "While I was in the holding cell, they needed me to provide a urine sample and I told them I couldn't go... I was put back in my cell at around 9:30 p.m. and the second shift was still on and they never came back to my cell." [Id., ¶III(B)] The DHO, relying on investigative interviews conducted on December 3, 2008 with Officers Miller, Witkowski, and Menne, and Inmate Casillas determined that the act was committed as charged. [Id., ¶III(D) and IV(A) and (B)] The DHO outlined the evidence relied upon in making these findings as follows:

> Inculpatory evidence in the form of Investigative Interviews by Lt. Reed, conducted 12/3/08, corroborated the evidence cited in the incident report in this case. Lt. Reed interviewed inmate Casillas during which the inmate indicated DePack was placed in his SHU cell on 12/2/08 and did not know the time he was placed in the cell but did say it was late.

4

>Casillas didn't know if any staff member came by to request a urine sample. Lt. Reed interviewed Officer Menne. [illegible]...[2] placed in the SHU cell. Officer Menne indicated DePack told him he could get [expletive deleted] and that he was not going to cooperate. [illegible] ... Officer Miller and Officer Witkowski was [sic] interviewed and their statements supported Officer Menne's statement.
>
>The DHO believed the information provided by staff members involved in this case, as they derived no known benefit by providing false information. The DHO finds the charge to be accurate and supported through the Investigating Lieutenant's interviews of staff and inmate.
>
>Upon questioning by the DHO, inmate DePack ... neither admitted nor denied the charge(s). He elaborated upon his plea by stating, the officer never asked him for a urine sample when he was placed in his cell.
>
>After consideration of evidence ... the DHO has drawn the conclusion the greater weight of the evidence/some facts ... support the finding that inmate DePack... committed the prohibited act ... Refusing to Provide a Urine Sample, Code 110... [Id., ¶V]

The DHO imposed sanctions including disallowance of good conduct time and disciplinary segregation. [rec. doc. 3-1, p. 13, ¶VI]

Petitioner appealed his conviction through the local, regional, and national levels. His appeals were rejected. In one instance he was advised, "Even if staff did not return to your cell at the end of two hours as you claim, you had advised staff

---

[2] Portions of the document have been obscured and are illegible.

you were not going to provide the sample. You had the ability to advise staff that you were ready to provide the sample if that were the case." [rec. doc. 1-3, p. 2] The appeal was rejected by the National Inmate Appeals Administrator on May 4, 2009 as follows, "On December 2, 2008 at 8:20 pm, you were directed to provide a urine specimen. At 10:20 pm you had not provided the urine specimen. Based upon the evidence available at the time of the DHO hearing, the conclusion is rational and supportable. The DHO relied upon the statement of staff that they returned to your cell during the two-hour period and you did not provide the urine specimen." [rec. doc. 3-1, p. 7]

On December 7, 2009 he signed the instant complaint; it was received and filed on December 17, 2009.

### Law and Analysis

Federal prisoners have liberty interests in their accumulated good-time credit. See <u>Henson v. U.S. Bureau of Prisons</u>, 213 F.3d 897, 898 (5th Cir.2000). Therefore, since petitioner lost good time credits, the analysis approved by the Supreme Court in <u>Wolff v. McDonnell</u>, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) and <u>Superintendent, Massachusetts Correctional Institution v. Hill</u>, 472 U.S. 445, 105 S.Ct. 2768,

86 L.Ed.2d 356 (1985), governs this review of the contested disciplinary proceeding.

In Wolff, the Court held, although the rights of a prisoner "...may be diminished by the needs and exigencies of the institutional environment, a prisoner is not wholly stripped of constitutional protections when he is imprisoned for crime." Nevertheless "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Id.* at 555-556. Accordingly, in order for a prison disciplinary proceeding to comport with the requirements of due process the following minimal procedural safeguards must be afforded: (1) adequate notice of the alleged violation; (2) an opportunity to present evidence, (3) written findings in support of the ruling, and (4) the requirement that upon review, "some evidence" support the ruling. Superintendent, Massachusetts Correctional Institution v. Hill, 472 U.S. 445, 454, 105 S.Ct. 2768, 86 L. Ed.2d 356 (1985); Wolff, *supra*, at 556.

In Hill, 472 U.S. 445, 457 (1985), the Supreme Court provided guidance regarding the "some evidence" standard of review for federal courts to apply in their assessment of prison disciplinary decisions involving the loss of good conduct time

credits. According to the Court, the requirements of due process are met, and the decision of the prison discipline officer must be upheld, if there is "some evidence" to support the decision. The process to be used by the reviewing court was further described as follows:

> <u>Ascertaining whether this standard is satisfied does not require</u> examination of the entire record, independent <u>assessment of the credibility of witness</u>, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.

*Id.* at 455-56 (emphasis supplied).

Once the reviewing court determines there is "some evidence" to support the finding of the DHO, the court must reject the evidentiary challenges by the petitioner and uphold the finding of the DHO. See *Id.* at 457. "The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact." *Id.* at 456.

Petitioner has provided copies of the BOP's Discipline Hearing Officer Report, Incident Report, and Notice of Discipline Hearing with respect to the incident he now contests. These exhibits establish beyond any doubt that petitioner received adequate notice of the alleged violation; that he was afforded

the opportunity to present evidence; and that written findings in support of the ruling were provided. In other words, the exhibits establish that petitioner was afforded all the process he was due under Wolff, *supra*.

Further, the exhibits establish that there was some if not ample evidence of guilt sufficient to satisfy the standard enunciated in Hill, *supra*.[3]

In short, petitioner has not shown that he was deprived of liberty without due process; therefore, he has failed to state a claim for which relief may be given and dismissal of his petition on that basis is appropriate.

### Conclusion

Considering the foregoing,

**IT IS RECOMMENDED** that this petition for *habeas corpus* be **DENIED AND DISMISSED WITH PREJUDICE** for failing to state a claim for which relief might be granted.

---

[3] As provided in Hill, *supra*, at pp. 455-56, the Court, in assessing whether "some evidence" supports the disciplinary conviction, is not required to assess the credibility of the witnesses who provided evidence at the DHO hearing. According to the DHO report, Officer Menne testified that petitioner indicated from the outset that he would not cooperate in providing the urine sample. This fact was duly noted both in the DHO Report and in the order rejecting petitioner's appeal, "Even if staff did not return to your cell at the end of two hours as you claim, you had advised staff you were not going to provide the sample. You had the ability to advise staff that you were ready to provide the sample if that were the case." [rec. doc. 1-3, p. 2]

In other words, even if the surveillance tape confirms petitioner's claim that no officers returned to his cell within the two hour time limit, he would still not be entitled to relief since there is "some evidence" establishing that he had made his intentions known to the officers.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this Recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the District Judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See,* <u>Douglass v. United Services Automobile Association</u>, 79 F.3d 1415 (5th Cir. 1996).

Signed in Chambers, Alexandria, Louisiana, on _____ 25 ___, 2010.

JAMES D. KIRK
United States Magistrate Judge